UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SANDRA L. SMITH,

                            Plaintiff

                                                          DECISION AND ORDER

-vs-

                                                          08-CV-6164 CJS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                            Defendant.

_____

APPEARANCES

For the Plaintiff:                Charles E. Binder, Esq.
                                       Jeannine LaPlace, Esq.
                                       Binder & Binder, P.C.
                                       215 Park Avenue South, 6th Fl.
                                       New York, New York 10003

For the Defendant:           John J. Field, Esq.
                                       Assistant United States Attorney
                                       100 State Street
                                       Rochester, New York 14614

INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied plaintiff Sandra Smith's ("Plaintiff") application for disability insurance and supplemental security income benefits. Now before the Court is Plaintiff's motion for judgment on the pleadings [#4], seeking an order directing that the matter be remanded solely for the calculation of benefits, or, in the alternative, remanding the case for a new

hearing before a new Administrative Law Judge ("ALJ"), and Defendant's cross-motion [#8] for an order remanding the case for a new hearing.  For the reasons that follow, Plaintiff's application is denied, Defendant's application is granted, and this matter is remanded for a new hearing.

## PROCEDURAL HISTORY

On February 23, 2005, Plaintiff applied for disability and supplemental security income benefits, claiming to be disabled due to back pain and stroke. (64-65).[1] The Commissioner denied the application.  On March 15, 2007 and June 6, 2007, a hearing was held before Administrative Law Judge Elizabeth W. Koennecke ("ALJ").  On September 24, 2007, the ALJ issued a decision denying benefits, finding that Plaintiff had failed to establish a severe impairment.(15-17).  On February 11, 2008, the Appeals Council denied Plaintiff's request for review. (5-7).  On April 10, 2008, Plaintiff commenced the subject action.

## VOCATIONAL HISTORY

Plaintiff was forty-four years of age at the time of the hearing, and had earned her GED, after leaving high school in the ninth grade. (292).  Her employment history includes work as a factory laborer and as a kennel maintenance worker in a veterinary hospital. (65).

## MEDICAL EVIDENCE

Plaintiff's medical history was summarized in the parties' submissions and need not be repeated here.  It is sufficient for purposes of this Decision and Order to note

---

[1]Unless otherwise noted, citations are to the Administrative Record.

that prior to September 2004, Plaintiff was in good health. On September 1, 2004, Plaintiff was injured in a motor-vehicle accident. Subsequently, she began to experience pain, in her back and radiating into her left leg. Plaintiff was diagnosed as having a "left L5-S1 herniated nucleus pulposus," and on November 1, 2004, she underwent surgery. The surgery provided some relief, although Plaintiff still complained of back pain and tingling and numbness in her legs. A few days after the surgery, Plaintiff began experiencing episodes where she felt dizzy and had trouble speaking. Plaintiff also began complaining of pain in her head. On December 17, 2004, Plaintiff had an MRI scan of her brain, which suggested a "watershed territory infarct," that is, an area of injury in the brain tissue caused by a stroke. Plaintiff subsequently complained of having problems with speaking and with understanding numbers.

On March 14, 2005, Webster H. Pilcher, M.D. ("Pilcher"), Plaintiff's treating neurosurgeon, examined Plaintiff and concluded that she could return to work part-time, with a restriction on lifting more than thirty pounds. On April 12, 2005, Plaintiff was examined by Look Persaud, M.D. ("Persaud"), an agency consulting neurologist. Persaud concluded that Plaintiff's prognosis was "fair to guarded," and that she had moderate to severe limitations on her ability to sit, stand and walk, for prolonged periods. Look further observed that Plaintiff was tearful and had abnormally slow speech, and he questioned whether she might have an underlying psychiatric problem. On May 3, 2007, David C.Y. Kung, M.D. ("Kung") examined Plaintiff and found that she had recurring problems with the L5-S1 disc, resulting in radiculopathy and sciatica, and he recommended that she have additional surgery. Yung also examined Plaintiff's brain MRI test result, and expressed doubt that it indicated a cerebral infarct. (252) ("I

3

cannot say that I see it [infarct], but there is some enhancement of cortex in the small areas of the brain on both sides but that is not true infarct."); (see also, 253) ("No evidence of cerebral infarct or abscess."). On May 4, 2005, Helen Collins, Ph.D. ("Collins"), a consulting psychologist, examined Plaintiff. Collins concluded that Plaintiff would be able to understand and follow simple directions and perform simple tasks, but would have problems paying attention, concentrating, performing complex tasks independently, relating to others, and dealing with stress. (174). Collins further noted that "[t]he results of the examination appeared to be consistent with stress related and cognitive problems [which] may significantly interfere with the claimant's ability to function on a daily basis." (175).

On March 15, 2007, Plaintiff appeared before the ALJ and provided her with updated medical information. The ALJ adjourned the hearing, to allow her to obtain Plaintiff's most-recent medical records. On June 6, 2007, the hearing resumed. Plaintiff testified concerning her medical history and work history. However, Plaintiff became increasingly agitated, and stated that she wanted to end the hearing. In that regard, Plaintiff expressed anger toward her doctors, based upon their comments in her medical records and their inability to cure her. She also expressed resignation that she would not receive benefits. The ALJ attempted to calm Plaintiff and have her continue, and she also took testimony from Plaintiff's mother. However, Plaintiff remained combative and agitated.

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence,

shall be conclusive."  The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition.  First, the SSA considers whether the claimant is currently engaged in substantial gainful employment.  If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities.  If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations.  If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled.  If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work.  Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (Citations omitted).  At step five of the five-step analysis above, the Commissioner may carry his burden by resorting to the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)(citation omitted); *see also*, SSR 83-10 (Stating that in the grids, "the only impairment-caused limitations considered in each rule are

exertional limitations.")  However, if a claimant has nonexertional impairments which "significantly limit the range of work permitted by his exertional limitations," then the Commissioner cannot rely upon the grids, and instead "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform."[2] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. § 416.969a(d).[3]

Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2).  However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling.  And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)).  Nevertheless,

---

[2]"Exertional limitations" are those which affect an applicant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  "Non-exertional limitations" are those which affect an applicant's ability to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R. 416.969a.

[3]20 C.F.R. § 416.927(d) provides, in relevant part, that, "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. . . . [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rule provides a framework to guide our decision."

> [a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id*. The regulations also specify that the Commissioner 'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion.' *Id*.; *accord* 20 C.F.R. § 416.927(d)(2); *see also Schaal*, 134 F.3d at 503-504 (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Administrative Law Judges are required to evaluate a claimant's credibility concerning pain according to the factors set forth in 20 C.F.R. § 404.1529, which states in relevant part:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528 (b) and (c). By other evidence, we mean the kinds of evidence described in §§ 404.1512(b) (2) through (6) and 404.1513(b) (1), (4), and (5) and (e). These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.
> ***
> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about

> how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. § 404.1529(a).  The regulation further states, in relevant part:

> Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

## THE ALJ'S DECISION

At the first step of the five-step sequential analysis described above, the ALJ found that plaintiff was not engaged in substantial gainful employment. At the second step of the analysis, the ALJ found that plaintiff had no severe impairments.(76). Consequently, the ALJ found that Plaintiff was not entitled to benefits.  In reaching the conclusion that Plaintiff's back impairments were not severe, the ALJ found that although Plaintiff had suffered from a herniated disc in 2004, the problem was corrected by surgery.  Additionally, the ALJ found that although Plaintiff had recurring disc problems in 2007, there was no indication that such problems would last for twelve

months if treated. (15-16) ("Based on this sequence of events, the undersigned concludes that the claimant has not established a 'severe' back disorder that meets the 12-month durational requirement. A back disorder that began in the summer of 2004 resolved within 12 months, and there is no proof that any recent onset of recurrent back and leg problems will last for 12 months if treated."). With regard to Plaintiff's cognitive problems, the ALJ discussed the medical reports, including Dr. Kung's findings, and concluded that Plaintiff had not "established a medically determinable impairment that would account for her neurological complaints." (16). The ALJ also found that Plaintiff's credibility was "diminished," purportedly by certain inconsistencies in her statements to doctors. (17).

## ANALYSIS

In their respective motions, the parties agree that the ALJ committed errors that require reversal. Plaintiff initially requested that the matter be remanded solely for calculation of benefits. However, during oral argument, Plaintiff's counsel admitted that remand for a new hearing was appropriate, due to gaps in the administrative record.[4] Accordingly, the only issue before the Court is whether the case should be assigned to a new ALJ. On this point, it is undisputed that the Court may direct that the case be reassigned. *See, e.g., Kolodnay v. Schweiker*, 680 F.2d 878, 881 (2d Cir. 1982)

---

[4]The Court agrees with Plaintiff that there are gaps in the record, particularly with regard to doctors' opinions concerning Plaintiff's specific functional limitations. (Plaintiff's Memo of Law at 16) (Commenting on the "dearth of opinions regarding Ms. Smith's functional limitations from treating sources."). Accordingly, the ALJ should attempt to obtain RFC assessments from the medical sources. Additionally, to the extent possible, the record should be developed concerning the cause of Plaintiff's cognitive complaints. For example, as discussed above, there is an apparent disagreement between Kung and Plaintiff's other doctors as to whether Plaintiff suffered a stroke, a point on which it would seem that doctors could agree. If the doctors do not agree, their medical opinions must be weighed according to the Commissioner's regulations.

("Judgment reversed and cause remanded for a hearing by a different administrative law judge."). However, the decision to reassign a case to a new ALJ is generally left to the Commissioner, and courts will not become involved without a good reason. *See, e.g., Henry v. Astrue*, No. 07-CV-2769(JG), 2008 WL 2697317 at *9 (E.D.N.Y. Jul. 3, 2008) ("The selection of a new ALJ on remand, however, has been considered to be within the discretion of the Commissioner of the Social Security Administration.") (collecting cases). The factors to be considered have been stated as follows:

> [R]emand to a new ALJ will be necessary in those situations which compromise [the] integrity [of the disability review process]. Specifically, when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate. Factors for consideration in this determination include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.

*Sutherland v, Barnhart*, 322 F.Supp.2d 282, 292 (E.D.N.Y. 2004). Applying these factors in the instant case, the Court finds that reassignment to a new ALJ is not warranted. At the outset, Plaintiff does not allege that the ALJ harbors any personal hostility toward her. Similarly, the Court finds no evidence of personal hostility by the ALJ toward Plaintiff. To the contrary, upon reviewing the transcript of the June 6, 2006 hearing, the Court is struck by the ALJ's courtesy and patience toward Plaintiff, who was clearly acting in an unreasonable manner. (298-309).[5] Instead, Plaintiff is concerned

---

[5]Plaintiff's counsel states that "at the hearing, Ms. Smith became incredibly upset at this particular ALJ and refused to give much further testimony." (Plaintiff's Reply Memo at 3). However, the Court disagrees that Plaintiff's anger was directed at the ALJ, or that the ALJ did anything to make Plaintiff upset. Instead, Plaintiff's outbursts, which may be attributable to cognitive or psychological problems,

that, based on errors in the ALJ's decision, the ALJ may not apply the appropriate legal standards on remand. However, the Court finds no clear indication that the ALJ will not apply the appropriate legal standards on remand. Accordingly, the Court presumes that upon remand the ALJ will apply the appropriate legal standards, as discussed above and in the parties' briefs.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion [#4] is denied, Defendant's cross-motion [#8] is granted, and this matter is remanded to the Commissioner for a new hearing pursuant to 42 U.S.C. § 405(g), sentence four. Plaintiff has been waiting almost four years for a resolution of this matter. Accordingly, the Commissioner should make every effort to expedite the re-hearing of this matter.

  So Ordered.

Dated: Rochester, New York
   January 23, 2009

              ENTER:


              /s/ Charles J. Siragusa
              CHARLES J. SIRAGUSA
              United States District Judge

---

were directed primarily at her doctors, the Social Security Administration generally, and her misfortunes in life. *See, e.g.*, Transcript at 302: "I read these stupid doctors' reports. Half the crap I tell them and half the stuff they know, they don't frickin put in there right. . . . [T]here ain't a damned thing they [the doctors] frickin done except for made everything worse." (298-309).